In the Matter of HARRY J. DAYSON, Appellant. LOUIS L. LEVINE, as Industrial Commissioner, Respondent.— Appeal by the claimant from a decision of the Unemployment Insurance Appeal Board, filed March 29, 1974, which adopted and affirmed a referee's decision sustaining the respondent's initial determination that the claimant was ineligible to receive benefits effective September 24, 1973 because he was not available for employment. The claimant was originally employed in New York State and, at the time he lost such employment, he filed a claim in this State for benefits which was allowed. Subsequent to reporting to the New York State local office on September 17, 1973, he spent about one day moving to Charlotte, North Carolina, and promptly upon his arrival on September 20, 1973 he reported to the appropriate North Carolina Unemployment Insurance Office. Since relocating to North Carolina, the referee found that the claimant has made only about three job contacts per week and this is supported by the interstate claim forms submitted by the claimant and contained in the record. The referee found that some of those job contacts were for positions for which the claimant was not suited by training and experience and, also, that the claimant must rely upon public transportation in reaching the local job market area. At the hearing held in North Carolina the claimant stated that he had applied for jobs requiring additional skills and not strictly within his classification as a laboratory research technician. A reporting form filed by the claimant and dated October 3, 1973 lists his means of transportation as " bus ". It thus appears that the referee's findings

as to the use of public transportation and as to the nature of some of the job seeking efforts by the claimant are supported by substantial evidence. The referee also found as a fact that "many job market locations are not serviced by public transportation" and that "claimant resides in an area where other means of transportation rather than public transportation to get to the job market area is necessary." The record contains no evidence which would in any way support the referee's findings that public transportation is inadequate for the claimant. Assuming that public transportation does not service the entire job market area, the record does not establish that such would be true as to the claimant's particular classification for employment. It is thus apparent that the referee's findings as adopted by the board contain error. The referee's finding that the claimant had sought employment in some fields for which he was not classified, while supported by substantial evidence, bears no particular relevance to the question of availability in the absence of some showing that there were available opportunities within the claimant's particular classification which he was ignoring by seeking employment for which he was not particularly well qualified. Aside from being classified as a laboratory technician, there is an indication that he was qualified to do certain types of mechanical-electrical work. It appears from the referee's opinion that he relied upon the fact that claimant had sought employment in fields in which he had no particular qualifications as an indication that the claimant was not sincerely attached to the labor market and, therefore, it appears that such finding was erroneously relied upon by the referee in reaching his conclusion of unavailability. Upon the appeal to the board, the claimant submitted a letter by and through his counsel controverting the conclusion reached by the referee as to unavailability. While the board is not required to hold any new hearings upon an appeal to it from a referee's decision, it must be noted that, among other things, the letter by the claimant and his counsel dated February 26, 1974 specifically asserted that the claimant had been told in North Carolina that three job contacts per week were what was necessary to meet their presumptive requirements as to a search for employment. Furthermore, in the same letter it was stated that the claimant was not required to rely upon public transportation, but that in fact he had the use of vehicles owned by various family relatives. The issue of the availability of public transportation and as it might bear upon the claimant's availability for employment was not raised by the initial determination of the respondent and was not recited as a basis for denial of benefits in the Commissioner's statement of position submitted to the referee and dated November 7, 1973. It is abundantly certain that in the hearing process the claimant was not given any fair opportunity to respond to any assertion that his means of transportation was so inadequate as to have a bearing upon his availability for employment. Upon this appeal the claimant contends that the failure of New York State to create standards and advise claimants thereof as to what prescisely is necessary to at least prima facie establish availability for employment is a constitutional defect in the nature of a denial of equal protection and due process of law. The denial of equal protection would apparently result from the probability that the respondent's representatives in the local offices are able to vary in their characterization of the numerical quantity of job seeking efforts because of the lack of a specific standard in regard to the number of job seeking efforts which are required. The failure of due process would apparently result from the lack of standards and communication thereof to a claimant so that he might know in advance what would at least constitute prima facie satisfactory job seeking efforts. While it is conceivable that the lack of specific standards in regard to an initial suspension of benefits based

upon a determination of unavailability for employment flowing from the number of public contacts made or not made by a claimant might have some bearing upon the propriety of a suspension of benefits (cf. *Steinberg* v. *Fusari*, 364 F. Supp. 922, 936, 938; but, see, *Torres* v. *New York State Dept. of Labor*, 333 F. Supp. 341, affd. 405 U. S. 949), this particular appeal does not involve the result of initial determinations made without hearings. In this State the question raised as to availability and eligibility for benefits pursuant to subdivision 2 of section 591 of the Labor Law is restricted to whether or not the claimant is one "who is not ready, willing and able to work in his usual employment or in any other for which he is reasonably fited by training and experience." Given the objective standard set forth in the statute as quoted herein, this court has held "whether a given claimant is in fact available for employment, and particularly as such is demonstrated by the sincerity of her efforts, is a question of fact to be determined by the board (e.g., *Matter of Natoli [Catherwood]*, 27 A D 2d 972)." (*Matter of Steiner [Catherwood]*, 31 A D 2d 669, 670, affd. 25 N Y 2d 819.) In rare instances a claimant may disclose facts such as illness or such other matters which are direct evidence of unavailability. In most instances the question of the claimant's availability for employment can only be ascertained through circumstantial evidence which in totality establishes that the claimant, while perhaps demonstrating some objective effort to seek employment, is in fact not willing to accept employment. It is only in this regard that the number of job contacts by an employee can be said to have some relevance to the question of availability. It seems readily apparent that the number of personal job seeking efforts in and of itself is not a fact which alone can establish that a claimant is not ready, willing and able to work. (See *Matter of Evans [Lubin]*, 5 A D 2d 737, 738.) Indeed, the present record establishes that in addition to whatever job seeking efforts the claimant personally made, he had registered with the appropriate employment service as apparently administered by the State of North Carolina. At present there is nothing to indicate that the claimant has been found ineligible for benefits solely because his record discloses only three personal job contacts per week. Thus, there is no basis in the present record for any contention that the claimant has been denied equal protection of the laws and/or due process in regard to the lack of criteria as to the number of job contacts which a claimant must make to establish eligibility. For such reason the court makes no determination as to the issue attempted to be raised by the claimant. Nevertheless, as in the recent case of *Matter of Cortis (Levine)* (46 A D 2d 32), the decision of the referee which was simply adopted by the board contains errors of fact and there has been no finding based solely upon the established fact of the quantity of personal interviews had by the claimant. The errors of fact in the decision being reviewed leave such decision without a sound basis for judicial review. Furthermore, as noted hereinabove, the record establishes that the referee and the board relied upon the adequacy of the claimant's means of transportation without the claimant ever having had opportunity to submit evidence in regard to such fact, and there is, as a result, an inherent denial of a fair hearing in regard to this particular claim and upon the record submitted herein. It may be that the hiatus in this case is due to the difference in inter-State requirements. Decision reversed, without costs, and matter remitted to the Unemployment Insurance Appeal Board for further proceedings not inconsistent herewith. Herlihy, P. J., Greenblott, Kane, Main and Larkin, JJ., concur.